1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**CENTRAL DISTRICT OF CALIFORNIA**

10
11

DEVIN SINGLETON,

Case No. EDCV 21-2164 AB (PVC)

12

Plaintiff,

13

v.

**ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND**

14

COUNTY OF RIVERSIDE, et al.,

15

Defendants.

16
17

**I.**

18

**INTRODUCTION**

19
20

On December 29, 2021, Plaintiff Devin Singleton, a California resident proceeding *pro se*, filed a civil rights complaint pursuant to 42 U.S.C. § 1983. ("Complaint," Dkt. No. 1). On January 6, 2022, the Court granted Plaintiff's application for *in forma pauperis* ("IFP") status. (Dkt. No. 5). The Court dismissed the Complaint with leave to amend on March 11, 2022 due to pleading defects. ("ODLA," Dkt. No. 6). On April 11, 2022, Plaintiff filed the instant First Amended Complaint. ("FAC," Dkt. No. 7).

21
22
23
24
25
26
27

In civil actions where the plaintiff is proceeding IFP, Congress requires district courts to dismiss the complaint if the court determines that the complaint, or any portion

28

thereof, (1) is frivolous or malicious, (2) fails to state a claim upon which relief can be granted, or (3) seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2).  While the First Amended Complaint addressed some of the defects in the original Complaint and reflects that Plaintiff made a concerted effort to follow the Court's directions in the ODLA, it still suffers from several pleading deficiencies.  Accordingly, for the reasons stated below, the First Amended Complaint is DISMISSED, with leave to amend.

## II.

## ALLEGATIONS OF THE FIRST AMENDED COMPLAINT

Plaintiff sues the Riverside County D.P.S.S. (Department of Public Social Services) and one of its employees, social worker Dion Williams.  (FAC at 3).  Williams is sued in his official capacity only.[1]  (*Id*.).

The First Amended Complaint is very short on detail and appears to assume familiarity with facts that are not clearly alleged.  Plaintiff states that on February 17, 2015, Williams falsely stated in an otherwise unidentified investigative report/dependency affidavit that Plaintiff had had sex with his former girlfriend when she was sixteen years old.  (*Id*. at 5).  Williams apparently repeated that falsehood in a court proceeding on June 30, 2021, even though Plaintiff expressly told him that he "never did such an act with this individual at anytime as a minor."  (*Id*. at 3, 5).  Plaintiff maintains that the Riverside County D.P.S.S. is liable because when its "personnel act on behalf of the County for an investigation, the County is essential in the investigation."  (*Id*. at 3).  Plaintiff contends

---

[1] Riverside County D.P.S.S. is also sued in its official capacity.  (FAC at 3).  This is proper, as "the distinction between individual and official capacity does not apply in the case of a direct suit against a government entity, which should be sued in an official capacity only."  *Pano v. Cnty. of Los Angeles*, 2019 WL 8685090, at *3 (C.D. Cal. Dec. 13, 2019).  The difference between individual and official capacity claims, which the Court addresses in further detail below, is relevant only to individuals.

that Williams is liable because "social workers are not entitled to absolute immunity from claims that they fabricated evidence during an investigation or made a false statements [sic] in a dependency petition that they signed under penalty of perjury." (*Id*. at 6).[2]

The First Amended Complaint appears to raise a single cause of action.  Plaintiff claims that he suffered a "deprivation of Civil Rights" due to Defendants' "violation of [his] 14th amendment" rights.  (*Id*.).  Plaintiff seeks monetary damages of $750,000.  (*Id*.).

## III.

## STANDARD OF REVIEW

When screening a complaint pursuant to § 1915(e)(2) to determine whether it states a claim upon which relief can be granted, courts apply the pleading standard set forth in Federal Rule of Civil Procedure 12(b)(6).  *See Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) ("The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) [the IFP statute] is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim.").  To survive dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  Rule 12(b)(6) is read in conjunction with Federal Rule of Civil Procedure 8, which requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2); *see also Li v.*

---

[2] The First Amended Complaint also attaches as an exhibit Plaintiff's administrative complaint submitted to the Riverside County Board of Supervisors in which he raised similar complaints.  (FAC at 7-11) (continuous pagination).

*Kerry*, 710 F.3d 995, 998 (9th Cir. 2013).  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."  *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)).

Although "detailed factual allegations" are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678 (Rule 12(b)(6) pleading standard is not satisfied by "an unadorned, the-defendant-unlawfully-harmed-me accusation," bare "labels and conclusions," or "naked assertion[s] devoid of further factual enhancement").  Similarly, courts will not "accept any unreasonable inferences or assume the truth of legal conclusions cast in the form of factual allegations."  *Ileto v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003); *see also Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017) (conclusory allegations of law are insufficient to state a claim); *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (Rule 12(b)(6) does not require the court to accept as true mere legal conclusions).

*Pro se* pleadings are "held to less stringent standards" than those drafted by a lawyer.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).  Where a plaintiff is appearing *pro se*, particularly in civil rights cases, courts construe pleadings liberally and afford the plaintiff any benefit of the doubt.  *See Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012).  However, even in giving liberal interpretation to a complaint, courts "'may not supply essential elements of the claim that were not initially pled.'"  *Chapman v. Pier 1 Imps. (U.S.), Inc.*, 631 F.3d 939, 954 (9th Cir. 2011) (quoting *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992)).

Before dismissing a *pro se* civil rights complaint, a plaintiff should be given

4

"notice of the deficiencies in his or her complaint" with "an opportunity to amend the complaint to overcome deficiencies unless it is clear [the deficiencies] cannot be cured by amendment." *Eldridge v. Block*, 832 F.2d 1132, 1135-36 (9th Cir. 1987); *see also Karim-Panahi v. L.A. Police Dept.*, 839 F.2d 621, 623 (9th Cir. 1998) (a *pro se* litigant "must be given leave to amend his or her complaint" even when a request to amend is not made "unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment")*.* However, "[u]nder Ninth Circuit case law, district courts are only required to grant leave to amend if a complaint can possibly be saved.  Courts are not required to grant leave to amend if a complaint lacks merit entirely." *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) (en banc).  Where amendment of the pleading would be futile, leave to amend is properly denied. *Ventress v. Japan Airlines*, 603 F.3d 676, 680 (9th Cir. 2010).

**IV.**

**DISCUSSION**

Pursuant to 28 U.S.C. § 1915(e)(2), the Court must dismiss Plaintiff's First Amended Complaint due to defects in pleading.  *Pro se* litigants in civil rights cases, however, must be given leave to amend their complaints unless it is absolutely clear that the deficiencies cannot be cured by amendment. *See Karim-Panahi*, 839 F.2d at 623; *Lopez*, 203 F.3d at 1129.  Accordingly, the Court grants leave to amend.

A.      **The Complaint Violates Federal Rule of Civil Procedure 8(a)**

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting Fed. R. Civ. P. 8(a)).  Rule 8 may be violated

1    when a pleading "says *too little*," and "when a pleading says *too much*."  *Knapp v. Hogan*,

2    738 F.3d 1106, 1108 (9th Cir. 2013) (emphasis in original).  A complaint violates Rule 8

3    if a defendant would have difficulty understanding and responding to the complaint.  *See*

4    *Cafasso*, 637 F.3d at 1058.

5

6          Here, the First Amended Complaint violates Rule 8(a) because it says too little.

7    There are almost no factual details to give context to Plaintiff's assertions.  For example,

8    the FAC contains references to an "investigative report/dependency affidavit," (FAC at 4),

9    and a "dependency petition," (*id*. at 6), which at least suggest that Plaintiff's claims arise

10   from dependency proceedings that potentially concerned the custody of a child.  At no

11   point, however, does the FAC ever state that Plaintiff is the father of a child, or identify

12   the mother of the child, or describe the circumstances that necessitated an investigation

13   into the child's custody or the court proceedings in which Williams purportedly testified.

14   The FAC also does not explain what Williams' 2015 "report" was, how it was used, or

15   when and how Plaintiff came to learn of its existence.  The FAC does not even state with

16   any precision what Williams' false statements were.  Although the FAC summarily asserts

17   that Williams falsely stated that Plaintiff had slept with his former girlfriend when she was

18   still a minor, it is not clear whether Williams affirmatively concluded following his

19   investigation that Plaintiff had slept with his girlfriend while she was underage, or

20   whether he was simply reporting what Plaintiff's ex-girlfriend had told him.  In the latter

21   example, even if the ex-girlfriend was lying when she accused Plaintiff of statutory rape,

22   Williams would be (potentially) liable for giving false testimony only if he fabricated

23   what Plaintiff's ex-girlfriend had told him, or presented her accusations as fact when he

24   had reason to know (beyond Plaintiff's mere denial of their veracity) that the ex-girlfriend

25   was being untruthful.

26

27          Even more importantly, the FAC does not describe what the *consequences* of

28   Williams' statements were, if any.  Plaintiff does not state whether he was denied or lost

custody of his child as a result of Williams' false statements, or suffered some other harm traceable to them, such as criminal charges being filed against him for sex with a minor. Plaintiff similarly does not explain why court proceedings were held in 2021 in which a 2015 investigative report was relevant.  In sum, the FAC simply does not show why Williams' falsehoods matter or how Plaintiff was harmed by them; it merely summarily asserts that absolute immunity does not apply to falsehoods spread by social workers, which is an improper legal conclusion, not a factual allegation.  This is not enough information to give Defendants notice of the claims against them.

Furthermore, although Plaintiff summarily asserts that his 14th Amendment rights were violated, (*id*. at 6), he does not disclose whether he believes the violation implicated his right to due process, or his right to equal protection, or both.  Nor does he state what each Defendant specifically and separately did to violate that right, as the Court will discuss further below.

Finally, it is unclear whether Plaintiff is attempting to base a claim solely on the incorrect information in Williams' 2015 investigative report.  However, if he is, and if Plaintiff had notice of the report's existence and contents at or around the time the report was prepared, Plaintiff is cautioned that any claim based on the report would appear to be barred by the statute of limitations.  "The applicable statute of limitations for actions brought pursuant to 42 U.S.C. § 1983 is the forum state's statute of limitations for personal injury actions." *Carpinteria Valley Farms, Ltd. v. County of Santa Barbara*, 344 F.3d 822, 828 (9th Cir. 2003).  Effective January 1, 2003, the statute of limitations for personal injury actions in California is two years.  Cal. Code Civ. Proc. § 335.1.  While state law determines the statute of limitations for § 1983 claims, "'federal law determines when a civil rights claim accrues.'"  *Azer v. Connell*, 306 F.3d 930, 936 (9th Cir. 2002) (quoting *Morales v. City of Los Angeles*, 214 F.3d 1151, 1153-54 (9th Cir. 2000)).  Under federal law, "a claim accrues when the plaintiff knows or should know of the injury that is

1 the basis of the cause of action." *Douglas v. Noelle*, 567 F.3d 1103, 1109 (9th Cir. 2009).

2

3      When a federal court borrows the state statute of limitations, it also borrows the

4 state's tolling rules.  *Canatella v. Van De Kamp*, 486 F.3d 1128, 1132 (9th Cir. 2007).

5 This applies to both statutory and equitable tolling.  *See Jones v. Blanas*, 393 F.3d 918,

6 927 (9th Cir. 2004) ("For actions under 42 U.S.C. § 1983, courts apply the forum state's

7 statute of limitations for personal injury actions, along with the forum state's law

8 regarding tolling, including equitable tolling, except to the extent any of these laws is

9 inconsistent with federal law.").  "Equitable tolling under California law 'operates

10 independently of the literal wording of the Code of Civil Procedure to suspend or extend a

11 statute of limitations as necessary to ensure fundamental practicality and fairness.'" *Id*. at

12 928 (quoting *Lantzy v. Centex Homes*, 31 Cal. 4th 363, 370 (2003)).  "Under California

13 law, a plaintiff must meet three conditions to equitably toll a statute of limitations:

14 (1) defendant must have had timely notice of the claim; (2) defendant must not be

15 prejudiced by being required to defend the otherwise barred claim; and (3) plaintiff's

16 conduct must have been reasonable and in good faith." *Fink v. Shedler*, 192 F.3d 911,

17 916 (9th Cir. 1999) (internal quotation marks and citation omitted).

18

19      The FAC asserts that Plaintiff was injured on February 17, 2015 and June 30, 2021,

20 apparently in reference to Williams' 2015 report and 2021 testimony.  (FAC at 3).

21 Plaintiff does not clearly explain when or how he learned of Williams' 2015 report, but

22 assuming that he learned of the falsehood that caused him an injury in February 2015, the

23 statute of limitations on that claim would appear to have expired in February 2017.

24 Because Plaintiff did not file the instant action until December 29, 2021, his claims based

25 on the 2015 report seemingly would be untimely by approximately four years and ten

26 months.  There are simply not enough facts alleged in the FAC for the Court to determine

27 when and how the 2015 report harmed Plaintiff, whether or to what extent Plaintiff is

28 basing his claims on the report, and whether the statute of limitations applies.

Accordingly, the First Amended Complaint is dismissed, with leave to amend.  If Plaintiff wishes to amend his pleading, he must state each claim separately and identify the specific Defendants who are allegedly liable for each claim, even if Plaintiff does not presently know their names.  In addition, Plaintiff should clearly, precisely, and briefly identify the legal basis and the essential facts underlying each claim.  Therefore, in an amended complaint, Plaintiff should clearly state:

(1)     What each Defendant -- including, separately, each Doe Defendant -- did to cause Plaintiff harm;

(2)     When and where each Defendant committed the alleged acts;

(3)     What harm resulted from each Defendant's alleged acts; and,

(4)     What federal statute or constitutional right each Defendant violated.

## B.     <u>Plaintiff Fails to State a Claim Against Riverside County D.P.S.S.</u>

Plaintiff vaguely asserts, without any supporting facts, that Riverside County D.P.S.S. is liable because when "personnel act on behalf of the County for an investigation, the County is essential in the investigation."  (FAC at 3).  As an initial matter, as the Court previously explained, Riverside County D.P.S.S., as a department of Riverside County, is an improper Defendant in this matter.  (ODLA at 9-10).  The proper local government Defendant is Riverside County itself.  *See Vance v. Cnty. of Santa Clara*, 928 F. Supp. 993, 996 (N.D. Cal. 1996) ("Naming a municipal department as a defendant is not an appropriate means of pleading a § 1983 action against a municipality.").[3]  Accordingly, the Court deems Plaintiff's claim against Riverside

---

[3] The Ninth Circuit has recognized an exception to the general rule that agencies or departments of local governments are improper defendants in § 1983 actions.  The Ninth Circuit has found that municipal police departments and county sheriff's departments are "public entities" under California law, and as such, are "separately suable," even when the city or county itself is a named defendant.  *See Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 624 (9th Cir. 1988) ("Municipal police departments are 'public entities' under California law and, hence, can be sued in federal court for alleged civil

County D.P.S.S. to be brought against the County of Riverside itself and admonishes Plaintiff to avoid naming a County agency, instead of the County itself, as a § 1983 Defendant.

Even so construed, however, the FAC's claim against the County fails to state a claim.   There is "no constitutional impediment to municipal liability." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.54, 691 (1978).  However, a local government may not be held vicariously responsible for the acts of its employees.  *Id.*; *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (extending <u>Monell</u>'s analysis of municipal liability to counties).  In other words, a local government is not liable simply because it employed a tortfeasor.  To assert a valid § 1983 claim against the County, Plaintiff must show both a deprivation of a constitutional right and a departmental policy, custom or practice that was the "moving force" behind the constitutional violation. *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 957 (9th Cir. 2008).  There must be "a direct causal link between a [County] policy or custom and the alleged constitutional deprivation."  *See id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).  Proof of a single incident of unconstitutional activity, or even a series of "isolated or sporadic incidents," is an insufficient basis to impose liability under § 1983.  *Gant v. Cnty. of Los Angeles*, 772 F.3d 608, 618 (9th Cir. 2014) (quoting *Okla. City v. Tuttle*, 471 U.S. 808, 823-24 (1985)).  Rather, liability must be "founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy."  *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

Plaintiff's sole basis for naming the County appears to be based on the assumption that when a County employee conducts an investigation, he is acting on behalf of the County, and the County is therefore vicariously liable for any wrongdoing committed by

---

rights violations."); *Streit v. Cnty. of Los Angeles*, 236 F.3d 552, 567 (9th Cir. 2001) ("a local law enforcement agency can be considered a separably suable entity" from the city or county where it is located in a § 1983 suit).

1    the employee during the investigation.  However, as already discussed, the County may

2    not be held liable merely because one of its employees violated Plaintiff's constitutional

3    rights while working for the County.  *See Monell*, 436 U.S. at 691.  The County is not

4    liable unless Plaintiff can identify a County policy, custom or practice that *caused* the

5    harm Plaintiff suffered.  Despite this requirement, the FAC does not allege that Plaintiff

6    was injured by any County policy, custom or practice; instead, it seems to contend that the

7    County is liable because Williams acted wrongfully on the job.  (FAC at 3).  This is not

8    sufficient to state a claim against a local government.  Additionally, even though Plaintiff

9    is not required to describe the County's alleged policy or practice in great detail, more is

10   needed than a simple conclusory assertion that a discriminatory policy exists.

11   Accordingly, the First Amended Complaint is dismissed, with leave to amend.

12

13        **C.    Plaintiff Fails to State An Official Capacity Claim Against Williams**

14

15        The FAC sues Williams in his official capacity only.  (FAC at 3).  A suit against a

16   defendant in his individual capacity "seek[s] to impose personal liability upon a

17   government official for actions he takes under color of state law. . . . Official-capacity

18   suits, in contrast, generally represent only another way of pleading an action against an

19   entity of which an officer is an agent."  *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)

20   (internal quotation marks omitted); *see also Community House, Inc. v. City of Boise,*

21   *Idaho*, 623 F.3d 945, 966-67 (9th Cir. 2010) (an official capacity suit is treated as a suit

22   against the entity).  Therefore, claims against Williams in his official capacity are

23   functionally claims against the County.  *See, e.g.*, *Mendiola-Martinez v. Arpaio*, 836 F.3d

24   1239, 1250 (9th Cir. 2016) ("When a county official like Sheriff Arpaio is sued in his

25   official capacity, the claims against him are claims against the county."); *Shafer v. City of*

26   *Boulder*, 896 F. Supp. 2d 915, 936 n.10 (D. Nev. 2012) (plaintiff's § 1983 claims "against

27   the Officer Defendants in their official capacity are considered one and the same as his

28   claims against [the police department] and the City").

Because "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity," where the local government entity is already a named defendant, official capacity claims are merely duplicative of the claims against the entity. *Graham*, 473 U.S. at 166.  In such instances, courts routinely dismiss the official capacity claims as redundant.  *See, e.g.*, *Center for Bio–Ethical Reform, Inc. v. Los Angeles Cnty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008) ("When both a municipal officer and a local government entity are named, and the officer is named only in an official capacity, the court may dismiss the officer as a redundant defendant."); *C.B. v. Moreno Valley Unified Sch. Dist.*, 544 F. Supp. 3d 973, 985 (C.D. Cal. 2021) (granting motion to dismiss official capacity claims against county sheriff "to avoid confusion and superfluity" where both the sheriff's department and the county were also named defendants); *Borenstein v. Animal Found.*, 526 F. Supp. 3d 820, 843 (D. Nev. 2021) (granting motion to dismiss official capacity claims against animal control officer as redundant where county was separately sued, and denying leave to amend the official capacity claims because amendment "would be futile").

Although Plaintiff initially filled in the box to indicate that Williams was being sued in his individual capacity, he then drew a line through it and added the notation "n/a," presumably to indicate that the individual capacity claim was "not applicable."  To the extent that Plaintiff intends to sue Williams in his official capacity only, the claim is redundant of the claim against the County, and therefore is subject to dismissal.  If Plaintiff wishes to obtain money damages from Williams, he must sue Williams in his individual capacity.  Accordingly, the FAC is dismissed, with leave to amend.

### D.    Plaintiff Fails to State a Due Process Claim Against Any Defendant

The FAC alleges that Defendants violated Plaintiff's "civil rights" under the 14th Amendment.  (FAC at 6).  As noted above, Plaintiff does not clarify whether he is

12

asserting a due process or equal protection claim.  However, because Plaintiff does not claim that he was being discriminated against *because of* his membership in a protected group or class, the Court presumes that Plaintiff may be attempting to state a due process claim.[4]  However, even so construed, the FAC fails to state a claim against either Williams (for actions he personally took that caused Plaintiff harm) or the County (for a custom, policy or practice that directly caused Plaintiff harm).

The Fourteenth Amendment provides that the State shall not "deprive any person of life, liberty or property, without due process of the law."  U.S. Const. amend. XIV, § 1.  "Parents and children have a well-elaborated constitutional right to live together without governmental interference."  *Wallis v. Spencer*, 202 F.3d 1126, 1136 (9th Cir. 2000) (citations omitted).  "That right is an essential liberty interest protected by the Fourteenth Amendment's guarantee that parents and children will not be separated by the state without due process of law except in an emergency."  *Id*.  "[T]he state may not remove children from their parents' custody without a court order unless there is specific, articulable evidence that provides reasonable cause to believe that a child is in imminent danger of abuse."  *Id*. at 1138 (citations omitted); *see also Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1106 (9th Cir. 2001) ("Government officials are required to obtain prior judicial authorization before intruding on a parent's custody of her child unless they possess information at the time of the seizure that establishes 'reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the scope of the intrusion is reasonably necessary to avert that specific injury.'") (quoting *Wallis*, 202 F.3d at 1138).

To allege a 14th Amendment violation premised on the unlawful interference with familial rights, a plaintiff must demonstrate that "the [alleged] harmful conduct 'shock[s]

---

[4] To the extent that Plaintiff did intend to state an equal protection claim, the Court refers Plaintiff to the equal protection analysis in the ODLA, which it incorporates here by reference as though it were set forth in full.  (*See* ODLA at 13-14).

the conscience' or 'offend[s] the community's sense of fair play and decency."
*Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1079 (9th Cir. 2011) (quoting *Rochin v. California*, 342 U.S. 165, 172-73 (1952)).  A social worker may be liable under § 1983 for deliberately fabricating evidence during an investigation or making false statements under penalty of perjury in a dependency proceeding.  *See Costanich v. Dep't of Soc. and Health Servs.*, 627 F.3d 1101, 1108, 1115 (9th Cir. 2010) (recognizing a Fourteenth Amendment due process right to be free from deliberately fabricated evidence in a civil child abuse proceeding that resulted in the revocation of plaintiff's foster care license and termination of guardianship of her dependents); *see also Hardwick v. Cnty. of Orange*, 844 F.3d 1112, 1117 (9th Cir. 2017) (*"Hardwick I"*) (recognizing a 14th Amendment due process right to be free from deliberate government use of perjured testimony and fabricated evidence in civil or criminal dependency proceedings designed to "rupture" a familial relationship).  A local government may be liable where its customs, policies and practices caused the deprivation of the right of familial association.  *See, e.g.*, *Hardwick v. Cnty. of Orange*, 980 F.3d 733, 738 (9th Cir. 2020) (*"Hardwick II"*); *see also Deeths v. Lucile Slater Packard Children's Hosp. at Stanford*, 2013 WL 3968198, at *10 (E.D. Cal. July 31, 2013) (dismissing claim that County had a practice or custom of improperly removing and detaining children where "the complaint focuse[d] on a single incident and provide[d] no indication that similar conduct has occurred on other occasions"); *Davis v. Ellensburg*, 869 F.2d 1230, 1233 (9th Cir. 1989) ("A plaintiff cannot prove the existence of a municipal policy or custom based solely on the occurrence of a single incident of unconstitutional action by a non-policymaking employee.").

The "'mere lack of due care by a state official' does not deprive an individual of life, liberty, or property under the Fourteenth Amendment."  *Graham v. Connor*, 490 U.S. 386, 396 (1989)) (quoting *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986)).  The plaintiff must "prove more than negligence but less than subjective intent -- something akin to reckless disregard."  *Id.*; *accord Gordon v. County of Orange*, 888 F.3d 1118,

1126 (9th Cir. 2018).

Here, Plaintiff does not state a due process violation because the FAC does not allege any facts showing that he had a child and that his child was removed from his custody as a consequence of Williams's statements and testimony and/or a County policy, custom or practice. Without a deprivation, there is no constitutional violation. Furthermore, even if Plaintiff had alleged a deprivation, he does not allege sufficient facts to show that Williams or a County policy, custom or practice were the cause of the deprivation. Accordingly, the FAC is dismissed, with leave to amend.

## V.
## CONCLUSION

For the reasons stated above, the First Amended Complaint is dismissed with leave to amend. If Plaintiff still wishes to pursue this action, he must file a Second Amended Complaint ("SAC") within **thirty (30) days from the date of this Order**. In any amended complaint, Plaintiff shall cure the defects described above. If Plaintiff chooses to file a SAC, he must clearly designate on the face of the document that it is the "Second Amended Complaint." The SAC must bear the docket number assigned to this case, and it must be retyped or rewritten in its entirety. Plaintiff shall not include new defendants or allegations that are not reasonably related to the claims asserted in the FAC. *See Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (denial of leave to amend not abuse of discretion where proposed new claims would have "greatly altered the nature of the litigation" and required defendants to undertake "an entirely new course of defense"); *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990) (affirming denial of leave to amend where additional claims "advance different legal theories and require proof of different facts"). In addition, the SAC must be complete in and of itself, without reference to the FAC or any other prior pleading, attachment, or document.

An amended complaint entirely takes the place of the preceding complaint. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992).  After amendment, the Court will treat any preceding complaint, including any exhibits attached to the preceding complaint, as nonexistent. *Id.*  If Plaintiff wishes the Court to consider any exhibits from the First Amended Complaint (or the original Complaint), he must re-attach them to the SAC.  Because the Court grants Plaintiff leave to amend all the claims raised here, any claim raised in the FAC is waived if it is not raised again in the SAC.  *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012).

In any amended complaint, Plaintiff should confine his allegations to the essential facts supporting each of his claims.  Plaintiff is strongly encouraged to keep his statements concise and to omit irrelevant details, but also to provide enough detail to give context to his claims and to make clear to Defendants why Plaintiff believes that they are liable.  Plaintiff is advised that pursuant to Federal Rule of Civil Procedure 8(a), all that is required is a "short and plain statement of the claim showing that the pleader is entitled to relief."  **Plaintiff is strongly encouraged to use the standard civil rights complaint form when filing any amended complaint, a copy of which is attached.**  In any amended complaint, Plaintiff must describe, to the extent possible, what each separate Defendant, including each separate Doe Defendant, if any, did to violate his rights; where and when the wrongful conduct occurred; the harm that Plaintiff suffered from the Defendant's acts and omissions; and the constitutional right or statute that each Defendant violated.  It is not necessary for Plaintiff to cite case law, include legal argument, or attach exhibits at this stage of the litigation.  Plaintiff is also advised to omit any claims for which he lacks a sufficient legal or factual basis.

The Court cautions Plaintiff that it generally will not be inclined to grant further opportunities to amend if the SAC continues to assert claims for which relief cannot be granted for the reasons explained in this Order.  "[A] district court's discretion over

16

amendments is especially broad 'where the court has already given a plaintiff one or more opportunities to amend his complaint.'" *Ismail v. Cnty. of Orange*, 917 F. Supp. 2d 1060, 1066 (C.D. Cal. 2012) (quoting *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 n.3 (9th Cir. 1987)); *see also Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011) ("[T]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.") (internal quotation marks omitted).  Thus, if Plaintiff files a SAC with claims that repeat the same pleading defects addressed in this Order, the Court may recommend that the SAC be dismissed with prejudice for failure to state a claim.  *See, e.g.*, *Rodriguez-Ramirez v. Sessions*, 2019 WL 4145062, at *6 (C.D. Cal. Mar. 21, 2019), report and recommendation adopted, 2019 WL 4140985 (C.D. Cal. Aug. 30, 2019); *Westerfield v. Gomez*, 2017 WL 4480821, at *1 (C.D. Cal. Aug. 30, 2017), report and recommendation adopted, 2017 WL 4480826 (C.D. Cal. Oct. 6, 2017).

Instead of filing a SAC, Plaintiff may choose to stand on the defective claims in the FAC, but must expressly notify the Court in writing of his intention to do so by the same deadline for filing a Second Amended Complaint, *i.e.*, thirty days from the date of this Order.  Plaintiff is cautioned, however, that when a plaintiff chooses to stand on a defective complaint despite having been afforded the opportunity to amend, the district court may dismiss any defective claims under Federal Rule of Civil Procedure 12(b)(6) and allow the action to proceed only on the surviving claims, if any, that sufficiently state a claim.  *See Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065 (9th Cir. 2004).  Plaintiff is advised that if he elects to stand on the defective claims in his Complaint, the Magistrate Judge will recommend that the Court dismiss some or all of his claims for the reasons stated in this Order.  *See McCalden v. California Library Ass'n*, 955 F.2d 1214, 1224 (9th Cir. 1992) (a plaintiff granted leave to amend a pleading "may elect to stand on her pleading and appeal"); *Edwards*, 356 F.3d at 1065 ("When the plaintiff timely responds with a formal notice of his intent not to amend, the threatened dismissal merely

1  ripens into a final, appealable judgment."). *Id.*

2

3      Accordingly, Plaintiff is ORDERED to file either a Second Amended Complaint or

4  a Notice of Intention to Stand on Defective First Amended Complaint within thirty days

5  of the date of this Order. **Plaintiff is explicitly cautioned that the failure to file either a**

6  **Second Amended Complaint or a Notice of Intention to Stand on Defective First**

7  **Amended Complaint by the Court's deadline *will* result in a recommendation that**

8  **this action be dismissed with prejudice for failure to prosecute and obey court orders**

9  **pursuant to Federal Rule of Civil Procedure 41(b).** *See Applied Underwriters, Inc. v.*

10  *Lichtenegger*, 913 F.3d 884, 891 (9th Cir. 2019) ("'The failure of the plaintiff eventually

11  to respond to the court's *ultimatum* -- either by amending the complaint or by indicating to

12  the court that it will not do so -- is properly met with the sanction of a Rule 41(b)

13  dismissal.'") (quoting *Edwards*, 356 F.3d at 1065) (emphasis in original).

14

15      Plaintiff is further advised that if he no longer wishes to pursue this action, he may

16  voluntarily dismiss it by filing a Notice of Dismissal in accordance with Federal Rule of

17  Civil Procedure 41(a)(1). **A form Notice of Dismissal is attached for Plaintiff's**

18  **convenience.**

19

20  DATED:  April 28, 2022

21

22  _____

23  PEDRO V. CASTILLO
   UNITED STATES MAGISTRATE JUDGE

24

25

26

27

28