UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEVIN SINGLETON,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>COUNTY OF RIVERSIDE, et al.,<br><br>　　　　　　Defendants. | Case No. EDCV 21-2164 SPG (PVC)<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE** |

This Report and Recommendation is submitted to the Honorable Sherilyn Peace Garnett, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

**I.**

**INTRODUCTION**

On December 29, 2021, Plaintiff Devin Singleton, a California resident proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983. ("Complaint," Dkt. No. 1). On January 6, 2022, the Court granted Plaintiff's application for *in forma pauperis* ("IFP") status. (Dkt. No. 5). Plaintiff alleges that a social worker with the Riverside County Department of Public Social Services ("DPSS") prepared a report in 2015 falsely

stating that Plaintiff admitted to having had a sexual encounter with his ex-girlfriend when she was 16 years old, and that the social worker repeated that falsehood when he testified at trial in June 2021 in a civil suit brought by Plaintiff against the County of San Bernardino and named and unnamed San Bernardino County social workers. (*See id.* at 2-6). The Court dismissed the Complaint on March 11, 2022 with leave to amend. (Dkt. No. 6). On April 11, 2022, Plaintiff filed a First Amended Complaint, ("FAC," Dkt. No. 7), which the Court also dismissed with leave to amend. (Dkt. No. 8).

Pending before the Court is Plaintiff's Second Amended Complaint. ("SAC," Dkt. No. 9). In civil actions where the plaintiff is proceeding IFP, Congress requires district courts to dismiss the complaint if the court determines that the complaint, or any portion thereof, (1) is frivolous or malicious, (2) fails to state a claim upon which relief can be granted, or (3) seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). Plaintiff has had three opportunities to state a claim and in each attempt he has failed. Based on the facts alleged, further attempts to state a claim would be futile. Accordingly, it is recommended that the Second Amended Complaint be dismissed with prejudice for failure to state a cognizable claim under Federal Rule of Civil Procedure 12(b)(6).

## II.

## ALLEGATIONS OF THE SECOND AMENDED COMPLAINT

The only defendant named in the SAC is Riverside County (the "County"). Plaintiff contends that the County employed social worker Dion Williams, who "was using the power given to him by the agency" when he made false statements about a single sexual encounter that Plaintiff purportedly had with his ex-girlfriend when she was a minor. (SAC at 3).[1]

---

[1] The Court will cite to the SAC and its attached exhibits using the CM/ECF-generated

Plaintiff explains that Williams interviewed him on February 17, 2015 in connection with a child protective services report filed by Elbony Gladney,[2] Plaintiff's first cousin, ex-girlfriend and the mother of his child. (*Id*. at 7). While Plaintiff's allegations concerning Williams and the incident he investigated are extremely difficult to follow, Plaintiff attaches Williams' 2015 investigative reports dating from February 16, 2015 through March 22, 2015 as Exhibit 4 to the SAC.[3] (*Id*. at 47-61). The reports clearly explain why Williams conducted the investigation and the conclusions he drew.

The reports disclose that on February 16, 2015, Gladney reported that her daughter had some scratches on her neck after she stayed with Plaintiff. (*Id*. at 52). Gladney told Williams that when she (Gladney) was six and Plaintiff was 13, he laid down next to her, fully clothed, and grinded on her. (*Id*. at 50). Gladney further stated that later, when she was sixteen, she and Plaintiff had consensual sex one time, but after that, they did not have sex again while she was between the ages of 16 and 18. (*Id*. at 52). Gladney moved in with Plaintiff when she was 18 and they had a dating and sexual relationship. (*Id*.). However, there was domestic violence throughout their relationship, including physical violence and verbal abuse, that escalated into a physical confrontation that led to Gladney being arrested and serving one year in prison. (*Id*.). Gladney and Plaintiff continued to be in a relationship upon her release despite a no contact restraining order. (*Id*.). When they ended their relationship, Gladney did not know she was pregnant. (*Id*.). When Plaintiff found out, he reported Gladney to her parole officer for violating the no contact order.

---

page numbers on the Court's docket.

[2] The SAC identifies Plaintiff's ex-girlfriend as "Elbony Gladney." (SAC at 7-8). Gladney is referred to alternatively as "Elbony" and "Ebony" Gladney in the official records attached to the SAC as exhibits. (*See, e.g., id*. at 20 (identifying "Ebony" as Gladney's alias)).

[3] In determining whether a complaint states a claim under Rule 12(b)(6), a court may "'consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice.'" *Plaskett v. Wormuth*, 18 F.4th 1072, 1083 (9th Cir. 2021) (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007)). Accordingly, the Court relies on Williams' reports attached to the SAC for the facts concerning the genesis and contents of the reports.

3

(*Id.*). Gladney turned herself in after the baby was born and served one month in prison. (*Id.*). Gladney reported that she and Plaintiff had been "embroiled in this custody issue ever since." (*Id.*).

Williams noted that the scratches on Plaintiff's daughter's neck were "very small and hardly noticeable." (*Id.* at 53). They had already healed and plainly did not occur in the last 24 hours. (*Id.* at 54). Plaintiff told Williams that his daughter had eczema and "scratches a lot." (*Id.* at 55). Williams told Plaintiff that Gladney "at no point" accused him of abusing their daughter, but simply wanted to know what caused the scratches, and could not contact Plaintiff directly to discuss the issue because of the no contact order. (*Id.*). In his report, Williams stated that Plaintiff "did not admit to the sexual inappropriate touching when [he and Gladney] were younger [*i.e.*, when Gladney was six and Plaintiff was thirteen] but did admit that they had sex when she was a minor [when Gladney was sixteen] and then continued the relationship after she became an adult." (*Id.* at 56). The report further reflects that on February 23, 2015, the child was examined by a dermatologist who concluded that the patches on her neck "were most consistent with nummular eczema." (*Id.* at 57). In the conclusion of the report, Williams found that any allegations of physical abuse related to the scratches were "unfounded" as the marks on the child's neck appeared to be caused by the child scratching her neck due to eczema. (*Id.* at 59). The matter was closed as "the referral did not rise to the level for CPS intervention." (*Id.* at 60).

On June 29, 2021, more than six years after the investigation, Plaintiff testified at trial in a civil case he brought against the County of San Bernardino and social workers Jessica Pichette and unnamed Doe defendants.[4] (*Id.* at 5). While Plaintiff was on the stand, he was asked by counsel for defendants to look at the investigation report prepared

---

[4] The SAC does not clearly describe Plaintiff's claims in his suit against San Bernardino County, the harm he purportedly suffered, or the relief requested, but does suggest that the outcome was unfavorable. (SAC at 9).

4

by Williams in 2015 in which Williams stated, in reference to Gladney, that Plaintiff "did not admit to the sexual inappropriate touching when they were younger but did admit that they had sex when she was a minor and then continued the relationship after she became an adult." (*Id*.). Plaintiff contends that he never admitted to having had sex with Gladney when she was underage and did not in fact have sexual relations with her until she was 18. (*Id*.). Williams took the stand the next day, June 30, 2021. (*Id*). Although Plaintiff cannot recall the exact words Williams spoke under oath, his recollection is that Williams "testified to allege the fabricated evidence of his report," stating on the stand that in an interview he had conducted on February 17, 2015, Plaintiff admitted to him "that [he] had a sexual relationship with [his] ex-girlfriend while she was a minor." (*Id*. at 6).

Plaintiff claims that his constitutional rights were violated on both February 17, 2015, when he was interviewed by Williams and Williams wrote in his report that Plaintiff admitted to having had sex with Gladney when she was sixteen, and June 30, 2021, the date Williams testified in Plaintiff's suit against San Bernardino County. (*Id*. at 3). Plaintiff argues that his 14th Amendment equal protection rights were violated during the 2015 interview with Williams because Williams "was accusing [him] of a heinous crime [of sex with Gladney when she was 16], and was not taking [his] statement from [him]." (*Id*. at 8). However, because Williams told Plaintiff that he did not believe that Plaintiff had harmed his daughter and that any accusations were unfounded, Plaintiff had no reason to suspect that Williams would "fabricate evidence" in his report about Plaintiff having sex with Gladney when she was underage. (*Id*.). Plaintiff believes that this false accusation "ruined" his 2021 case against San Bernardino County and allowed social worker Jessica Pichette to detain his daughter based on a false accusation by Gladney that Plaintiff had sexually abused his daughter, even though the "juvenile dependency court after trial said that the evidence showed that [Plaintiff] never sexually abused our daughter." (*Id*. at 9). Nonetheless, Plaintiff maintains that Williams' "fabricated evidence" of an underage sexual encounter caused the jury to be "disgusted" with him

5

from that point on in his suit against San Bernardino County. (*Id.*).

Plaintiff further contends that the use of this fabricated evidence in Williams' report and in Williams' testimony on the stand violated not only his equal protection rights, but also his Fourteenth Amendment due process rights and Eighth Amendment rights. (*Id.*). Plaintiff seeks $750,000 in monetary damages for "peace of mind." (*Id.* at 11).

### III.
### STANDARD

When screening a complaint to determine whether it states a claim upon which relief can be granted, courts apply the pleading standard set forth in Federal Rule of Civil Procedure 12(b)(6). *See Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) ("The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) [the IFP statute] is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim."). To survive dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)).

"Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires not only 'fair

notice of the nature of the claim, but also grounds on which the claim rests.'" *Zixiang Li v. Kerry*, 710 F.3d 995, 998-99 (9th Cir. 2013) (quoting *Twombly*, 550 U.S. at 556 n.3). Pursuant to Rule 8, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 may be violated when a pleading "says *too little*," and "when a pleading says *too much*." *Knapp v. Hogan*, 738 F.3d 1106, 1108 (9th Cir. 2013) (emphasis in original). A complaint violates Rule 8 if a defendant would have difficulty understanding and responding to the complaint. *See Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011).

Although "detailed factual allegations" are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (Rule 12(b)(6) pleading standard is not satisfied by "an unadorned, the-defendant-unlawfully-harmed-me accusation," bare "labels and conclusions," or "naked assertion[s] devoid of further factual enhancement"). Similarly, courts will not "accept any unreasonable inferences or assume the truth of legal conclusions cast in the form of factual allegations." *Ileto v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003); *see also Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017) (conclusory allegations of law are insufficient to state a claim); *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (Rule 12(b)(6) does not require the court to accept as true mere legal conclusions). *Pro se* pleadings are "held to less stringent standards" than those drafted by a lawyer. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). Where a plaintiff is appearing *pro se*, particularly in civil rights cases, courts construe pleadings liberally and afford the plaintiff any benefit of the doubt. *See Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012). However, even in giving liberal interpretation to a complaint, courts "may not supply essential elements of the claim that were not initially pled." *Chapman v. Pier 1 Imps. (U.S.), Inc.*, 631 F.3d 939, 954 (9th Cir. 2011) (quoting *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992)).

Before dismissing a *pro se* civil rights complaint, a plaintiff should be given "notice of the deficiencies in his or her complaint" with "an opportunity to amend the complaint to overcome deficiencies unless it is clear [the deficiencies] cannot be cured by amendment." *Eldridge v. Block*, 832 F.2d 1132, 1135-36 (9th Cir. 1987). "Under Ninth Circuit case law, district courts are only required to grant leave to amend if a complaint can possibly be saved. Courts are not required to grant leave to amend if a complaint lacks merit entirely." *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) (en banc). The Court's "discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *United States ex rel. Cafasso v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011) (internal quotation marks omitted); *accord Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1116 (9th Cir. 2014); *Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 879 (9th Cir. 1999).

## IV.
## DISCUSSION

### A. The SAC Fails To State A *Monell* Claim Against The County

As the Court will explain in further detail below, Plaintiff fails to allege a violation of his constitutional rights. However, even if he had, the SAC utterly fails to state a claim against the only Defendant in this case, the County of Riverside, because Plaintiff does not allege facts plausibly showing that there was a direct causal link between any harm he allegedly suffered and a County policy, custom, or practice.[5]

A local governmental entity, such as a city or county, may be a proper defendant in a § 1983 action. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690

---

[5] Although social worker Williams was a named Defendant in the original and First Amended Complaints, Plaintiff abandoned any claims against Williams in the Second Amended Complaint.

n.54 (1978) (there is "no constitutional impediment to municipal liability" under § 1983); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (extending *Monell*'s analysis of municipal liability to counties). However, a local government entity is not liable under § 1983 simply because its employees violated the plaintiff's constitutional rights. *Monell*, 436 U.S. at 691. To prevail on a § 1983 claim against a city or county, a plaintiff must show both a deprivation of a constitutional right *and* a departmental policy, custom or practice that was the "moving force" behind the constitutional violation. *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 957 (9th Cir. 2008). Proof of a single incident of unconstitutional activity, or even a series of "isolated or sporadic incidents," is insufficient to impose liability under § 1983. *Gant v. Cnty. of Los Angeles*, 772 F.3d 608, 618 (9th Cir. 2014) (quoting *Okla. City v. Tuttle*, 471 U.S. 808, 823-24 (1985)); *Davis v. Ellensburg*, 869 F.2d 1230, 1233 (9th Cir. 1989) ("A plaintiff cannot prove the existence of a municipal policy or custom based solely on the occurrence of a single incident of unconstitutional action by a non-policymaking employee."). Rather, liability must be "founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

The plaintiff may establish the existence of a policy, custom or practice in any one of three ways:

> First, the plaintiff may prove that a city [or county] employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity. Second, the plaintiff may establish that the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official governmental policy. Whether a

>particular official has final policy-making authority is a question of state law. Third, the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it.

*Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992) (citations and internal quotations omitted); *see also Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (quoting same). "Policies of action" and "policies of inaction" may both give rise to liability under *Monell*. *Jackson v. Barnes*, 749 F.3d 755, 763 (9th Cir. 2014). However, there must be "a direct causal link between a [governmental] policy or custom and the alleged constitutional deprivation." *See Villegas*, 541 F.3d at 957 (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).

Plaintiff's claims, in essence, allege that Williams misquoted him in a 2015 report and repeated the erroneously-attributed statement at trial in 2021, likely in reference to his 2015 report. However, the SAC does not even attempt to identify any County policy, custom or practice that directly caused Williams to misquote Plaintiff in his 2015 investigative report or to confirm the erroneous contents of that report in his 2021 testimony. It is not enough that Williams was "using the power given to him by the agency," as the SAC alleges, when Williams made the alleged misstatements. (SAC at 3). The County's policies, customs or practices must have foreseeably caused Williams to misquote Plaintiff. Nor does the SAC allege any facts suggesting that Williams, a staff social worker charged with conducting a ground-level investigation of a report of possible child endangerment, was a high-level official with final policy-making authority such that making a misstatement in a report somehow could be deemed County policy. Finally, there is no hint in the SAC that any high-level County official ever even saw Williams' report, much less "ratified" the inclusion of a knowing misstatement in it. This is Plaintiffs' third attempt to state a claim against the County, and even though he has been

advised that to state such a claim, he must allege that he was injured pursuant to a County policy, custom or practice, he still has not done so. (*See* Dkt. No. 6 at 9 (ODLA dismissing original Complaint); Dkt. No. 8 at 10-11 (ODLA dismissing FAC)). Indeed, on these facts, it is difficult to imagine what such a policy would be. Accordingly, it is recommended that the SAC be dismissed with prejudice for failure to state a *Monell* claim.

### B. The SAC Fails To State A Fourteenth Amendment Claim

#### 1. Due Process

Plaintiff has alleged no facts establishing that it was Riverside County's policy, custom or practice for social workers to make false statements. But even if he had, the claims would still fail substantively. Plaintiff alleges that Williams' 2015 report and 2021 testimony violated his Fourteenth Amendment due process rights. (SAC at 9-10). Although the SAC does not clearly identify what process Plaintiff believes he was due, or what harm he suffered as a consequence of the purported violation, it is possible that the SAC may be attempting to allege that (1) Plaintiff had a due process right to be quoted accurately in an investigation report, even if the investigation itself concluded favorably; or (2) Williams' false statements had some (unexplained) adverse connection to vaguely-described actions taken by the San Bernardino County Department of Social Services, or at least to Plaintiff's ability to collect money damages in compensation for those actions.

The Fourteenth Amendment provides that the State shall not "deprive any person of life, liberty or property, without due process of the law." U.S. Const. amend. XIV, § 1. To state a substantive due process claim, a plaintiff must allege that a state actor deprived him "of life, liberty, or property in such a way that 'shocks the conscience' or 'interferes with rights implicit in the concept of ordered liberty.'" *Corales v. Bennett*, 567 F.3d 554,

568 (9th Cir. 2009) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). To state a procedural due process claim, a plaintiff must demonstrate that he was denied substantive due process, then show that the procedures attendant upon the deprivation were constitutionally insufficient. *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 459-60 (1989); *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998) ("A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections."). The "'mere lack of due care by a state official' does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Graham v. Connor*, 490 U.S. 386, 396 (1989)) (quoting *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986)). The plaintiff must "prove more than negligence but less than subjective intent -- something akin to reckless disregard." *Id.*; *accord Gordon v. County of Orange*, 888 F.3d 1118, 1126 (9th Cir. 2018).

To the extent that Plaintiff's due process claim may have some vague connection to his custodial rights over his daughter, which the SAC does not clearly explain, it is beyond dispute that "[p]arents and children have a well-elaborated constitutional right to live together without governmental interference." *Wallis v. Spencer*, 202 F.3d 1126, 1136 (9th Cir. 2000) (citations omitted). "That right is an essential liberty interest protected by the Fourteenth Amendment's guarantee that parents and children will not be separated by the state without due process of law except in an emergency." *Id*. "[T]he state may not remove children from their parents' custody without a court order unless there is specific, articulable evidence that provides reasonable cause to believe that a child is in imminent danger of abuse." *Id*. at 1138 (citations omitted); *see also Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1106 (9th Cir. 2001) ("Government officials are required to obtain prior judicial authorization before intruding on a parent's custody of her child unless they possess information at the time of the seizure that establishes 'reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the

scope of the intrusion is reasonably necessary to avert that specific injury.'") (quoting *Wallis*, 202 F.3d at 1138).

To allege a 14th Amendment violation premised on the unlawful interference with familial rights, a plaintiff must demonstrate that "the [alleged] harmful conduct 'shock[s] the conscience' or 'offend[s] the community's sense of fair play and decency." *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1079 (9th Cir. 2011) (quoting *Rochin v. California*, 342 U.S. 165, 172-73 (1952)). A social worker may be liable under § 1983 for deliberately fabricating evidence during an investigation or making false statements under penalty of perjury in a dependency proceeding. *See Costanich v. Dep't of Soc. and Health Servs.*, 627 F.3d 1101, 1108, 1115 (9th Cir. 2010) (recognizing a Fourteenth Amendment due process right to be free from deliberately fabricated evidence in a civil child abuse proceeding that resulted in the revocation of plaintiff's foster care license and termination of guardianship of her dependents); *see also Hardwick v. Cnty. of Orange*, 844 F.3d 1112, 1117 (9th Cir. 2017) (*"Hardwick I"*) (recognizing a 14th Amendment due process right to be free from deliberate government use of perjured testimony and fabricated evidence in civil or criminal dependency proceedings designed to "rupture" a familial relationship). A local government may be liable where its customs, policies and practices caused the deprivation of the right of familial association. *See, e.g.*, *Hardwick v. Cnty. of Orange*, 980 F.3d 733, 738 (9th Cir. 2020) (*"Hardwick II"*); *see also Deeths v. Lucile Slater Packard Children's Hosp. at Stanford*, 2013 WL 3968198, at *10 (E.D. Cal. July 31, 2013) (dismissing claim that County had a practice or custom of improperly removing and detaining children where "the complaint focuse[d] on a single incident and provide[d] no indication that similar conduct has occurred on other occasions").

With respect to the 2015 report, Plaintiff appears to contend that he had a due process right not to be misquoted in an investigation report. (SAC at 9-10). Even if such a claim were not grossly untimely, which the Court need not decide, it would still fail on

the merits.[6] The SAC does not, and cannot, plausibly allege that Plaintiff suffered any harm in 2015 from the inclusion of the allegedly false statement in Williams' report. Whether or not Plaintiff admitted to Williams that he had sex with Gladney when she was sixteen, the outcome of Williams' investigation was entirely favorable to Plaintiff as it exonerated him of any wrongdoing. Williams expressly found that there were "no safety factors present" with respect to Plaintiff's daughter, and recommended that the investigation not be promoted any further. (SAC at 60). Williams closed the referral as "unfounded," and no further action was taken by the Riverside County DPSS. Furthermore, Williams did not recommend that Plaintiff be charged with sex with a minor, or that he be deemed an unfit father because he purportedly had sex with the child's mother when the child's mother was sixteen. (*Id*. at 51). The report's inclusion of a purportedly false statement simply did not have any adverse consequences at the time, and Plaintiff himself admits that he did not know of the contents of Williams' report until June 2021. Therefore, the mere inclusion of an allegedly false statement in a report of an investigation that ended favorably did not, by itself, cause Plaintiff harm at the time the report was drafted.

Nor did Williams' testimony six years later in the civil suit brought by Plaintiff against the County of San Bernardino in 2021 violate Plaintiff's due process rights. Although Plaintiff's allegations about his 2021 action are extremely difficult to follow, it appears that at some point prior to that suit, Gladney may have falsely accused Plaintiff of sexually abusing their daughter. (SAC at 9). Based on that false accusation and allegedly

---

[6] The statute of limitations for § 1983 claims in the state of California is two years. *Carpinteria Valley Farms, Ltd. v. Cnty. of Santa Barbara*, 344 F.3d 822, 828 (9th Cir. 2003) (§1983 borrows the state statute of limitations for personal injury actions); Cal. Code Civ. Proc. § 335.1 (providing two-year statute of limitations for personal injury claims). However, under federal law, which governs the accrual of § 1983 claims, "a claim accrues when the plaintiff knows or should know of the injury that is the basis of the cause of action." *Douglas v. Noelle*, 567 F.3d 1103, 1109 (9th Cir. 2009). Plaintiff states that he did not learn the contents of Williams' 2015 until he (Plaintiff) took the stand on June 29, 2021. (SAC at 9). However, because Plaintiff's Fourteenth Amendment claims plainly fail on other grounds, the Court does not base its rejection of Plaintiff's due process claim as it pertains to the 2015 report on timeliness grounds.

14

fabricated evidence by San Bernardino County social worker Jessica Pichette, Plaintiff's daughter may have been taken from him for some undisclosed period. (*Id.*). Plaintiff states that at the conclusion of juvenile dependency proceedings, "the juvenile dependency court . . . said that the evidence showed that I never sexually abused our daughter." (*Id.*). The SAC appears to allege that Plaintiff then brought suit against the County of San Bernardino and Pichette for violation of his constitutional rights, and that both Plaintiff and Williams testified at that trial about the alleged "false accusation" in Williams' 2015 report. (*Id.*). Plaintiff argues that "because of the false accusation Dion Williams made in Court with the false evidence [about Plaintiff having had sex with Gladney when she was 16] . . . I think from that point on the jury was disgusted with me" and his case against the County was "ruined." (*Id.*). However, according to these allegations, Plaintiff did not lose custody of his daughter, even temporarily, as a result of Williams' false quote -- if he lost custody of his daughter, it was because of Gladney's false accusation that Plaintiff sexually abused their daughter and the purportedly "fabricated evidence" brought by a San Bernardino County social worker. Plaintiff does not allege any facts remotely suggesting that Williams' 2015 report had any bearing on the dependency proceedings in San Bernardino County, and because Williams' 2021 testimony occurred after the dependency proceedings had concluded, it logically could not have influenced any prior custody proceedings.

Furthermore, Plaintiff did not have a constitutionally-protected claim of entitlement to a particular outcome of his claims in his private civil action against San Bernardino County. Even if he did, his contention that he lost his civil case against San Bernardino County because of Williams' testimony about a single statement in a six-year old report is utter speculation. *See Manufactured Home Communities Inc. v. City of San Jose*, 420 F.3d 1022, 1035 (9th Cir. 2005) (rejecting claims of bias that were based on "nothing more than speculation"); *Thomas v. Hernandez*, 740 F. Supp. 2d 1174, 1180 (S.D. Cal. 2010) (granting motion to dismiss where plaintiff's prejudice allegations were based on

15

"mere speculation"); *McKenna v. Permanente Med. Grp., Inc.*, 894 F. Supp. 2d 1258, 1283 (E.D. Cal. 2012) (dismissing hostile work environment claim where causation allegations were based on "mere speculation"). There are any number of reasons why a jury may have reached a particular verdict. Plaintiff's claim that the jury turned on him solely because Williams claimed that Plaintiff had admitted to having had sex with his sixteen-year-old ex-girlfriend fails to state a plausible claim. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. 544, 570 (2007).

Even though Plaintiff has had multiple opportunities to state a due process claim, and despite the Court's prior instructions, Plaintiff still has not alleged the basic elements of such a claim. (*See* Dkt. No. 6 at 14-17 (ODLA dismissing original Complaint); Dkt. No. 8 at 12-15 (ODLA dismissing FAC)). Further attempts at amendment would be futile. Accordingly, it is recommended that the SAC be dismissed with prejudice to the extent that it attempts to state a due process claim.

### 2. Equal Protection

Plaintiff summarily alleges that Williams' inclusion in his report and in his testimony of "fabricated evidence," *i.e.*, the attribution of a false admission by Plaintiff, violated his equal protection rights. (SAC at 9). The Equal Protection Clause broadly requires the government to treat similarly situated people equally. *Hartman v. California Dep't of Corr. and Rehabilitation*, 707 F.3d 1114, 1123 (9th Cir. 2013). To state an equal protection claim, typically a plaintiff must allege that "'defendants acted with an intent or purpose to discriminate against [him] based upon membership in a protected class,'" such as a particular race or religion. *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (quoting *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998)). "Intentional discrimination means that a defendant acted at least in part *because* of a plaintiff's protected status." *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003) (internal

quotation marks and citation omitted; emphasis in original); *see also Byrd v. Maricopa Cnty. Sheriff's Dep't*, 565 F.3d 1205, 1212 (9th Cir. 2009) (to state an equal protection claim, plaintiff "must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent").

Plaintiff's equal protection assertions are conclusory and entirely unsupported. Plaintiff does not allege that he is a member of a protected class or that he was treated differently than any other similarly situated person; he does not even describe what attributes a similarly situated person would have. Just as fatally, the SAC does not allege that the County's unidentified policy, custom or practice was implemented for the purpose of discriminating against members of Plaintiff's unidentified protected class.[7]

Even though Plaintiff has had multiple opportunities to state an equal protection claim, and despite the Court's prior instructions, Plaintiff still has not alleged the basic elements of such a claim. (*See* Dkt. No. 6 at 13-14 (ODLA dismissing original Complaint); Dkt. No. 8 at 13 n.1 (ODLA dismissing FAC)). Further attempts at amendment would be futile. Accordingly, it is recommended that the SAC be dismissed with prejudice to the extent that it attempts to state an equal protection claim.

### C. The SAC Fails To State An Eighth Amendment Claim

Finally, Plaintiff vaguely alleges that Williams' 2015 report and 2021 testimony violated his Eighth Amendment rights. (SAC at 9). Infliction of suffering on *prisoners* that is "totally without penological justification" violates the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). Only "the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment."

---

[7] Although it would not necessarily be relevant to a *Monell* claim against the County, the SAC does not even allege that Williams personally discriminated against Plaintiff out of his hatred for the protected class of which Plaintiff is a member.

17

*Whitley v. Albers*, 475 U.S. 312, 319 (1986) (internal quotation marks and citation omitted).  To state an Eighth Amendment claim, a prisoner must allege that prison officials acted with deliberate indifference to a substantial risk of serious harm.  *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).  However, the protections of the Eighth Amendment are "reserved for 'those convicted of crimes' . . . ."  *Hawkins v. Comparet-Cassani*, 251 F.3d 1230, 1238 (9th Cir. 2001) (quoting *Whitley*, 475 U.S. at 318); *see also Ingraham v. Wright*, 430 U.S. 651, 671-72 n. 40 (1977) ("Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions.").

Plaintiff was not a convicted prisoner in the custody of the state at the time of the alleged violations, and as such, the Eighth Amendment does not apply.  Further attempts at amendment would be futile.  Accordingly, it is recommended that the SAC be dismissed with prejudice to the extent that it attempts to state an Eighth Amendment claim.

## V.

## RECOMMENDATION

Liability cannot be established under § 1983 "unless there is an actual deprivation of civil rights." *Woodrum v. Woodward Cty., Okla.*, 866 F.2d 1121, 1127 (9th Cir. 1989). Plaintiff has failed, despite repeated attempts, to plausibly allege facts that a County policy, custom or practice caused the violation of a cognizable constitutional right. For the foregoing reasons, it is recommended that the Court issue an Order (1) accepting this Report and Recommendation, and (2) directing that judgment be entered dismissing this action with prejudice for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

DATED: July 18, 2022

_____
PEDRO V. CASTILLO
UNITED STATES MAGISTRATE JUDGE